IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NO. JKB-12-0616 |
| TAVON MCPHAUL, | * | CIVIL NO. JKB-15-3487 |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

The Defendant Tavon McPhaul filed a Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255. (Mot. Vacate, ECF No. 110.) McPhaul pleaded guilty to one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and one count of possessing and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c).[1] (Judgment at 1, ECF No. 75.) The Government opposes this motion. (ECF No. 112.) Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," no hearing is required. 28 U.S.C. § 2255(b); *see* Local Rules 105.6, 207 (D. Md. 2018). For the reasons set forth below, the Motion will be denied.

---

[1] McPhaul states in the supplement to his motion to vacate that his attorney failed to inform him that he pleaded guilty to a conspiracy as opposed to a Hobbs Act robbery. (Suppl. at 5, ECF No. 130.) McPhaul explains that the Government stated during the arraignment and sentencing hearings that he was engaged in a criminal conspiracy. (Suppl. at 5, ECF No. 130.) Though that is true, it does not change the fact that McPhaul pleaded guilty to a Hobbs Act robbery—and not a conspiracy—as reflected in the plea agreement (ECF No. 51) and the arraignment transcript (ECF No. 88). Thus, to the extent McPhaul argues that his attorney provided ineffective assistance of counsel by failing to object that he was not convicted of a crime of violence under § 924(c), he is mistaken. (Suppl. at 5.) As explained in the Court's previous Order (ECF No. 139), a Hobbs Act robbery still constitutes a crime of violence. *See United States v. Mathis*, 932 F.3d 242, 266 (4th Cir.), *cert. denied sub nom. Uhuru v. United States*, 140 S. Ct. 639 (2019), *and cert. denied sub nom. Stokes v. United States*, 140 S. Ct. 640 (2019).

### I. Legal Standard

Section 2255 allows a federal prisoner to move to set aside a sentence on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Procedurally, if "a claim could have been raised on direct appeal, and was not, the general rule is that 'claims not raised on direct appeal may not be raised on collateral review[.]'" *Jones v. United States*, Crim. No. DKC-14-0176, 2018 WL 1069438, at *2 (D. Md. Feb. 27, 2018) (alterations in original) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)). Further, a petitioner "cannot 'circumvent a proper ruling on direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009) (alteration omitted)). The petitioner in a Section 2255 proceeding bears the burden of proving his entitlement to relief by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### II. Analysis

McPhaul claims his attorney, Michael Lawlor, provided ineffective assistance of counsel because Lawlor failed to "adequately investigate and present to the court" McPhaul's history of mental illness due to lead poisoning in support of a downward departure, and failed to argue that increasing the amount of restitution based on conduct not included in the indictment was a violation of *United States v. Alleyne*, 570 U.S. 99 (2013). (Mot. Vacate at 5.) To prove ineffective

assistance of counsel, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984). "A lawyer's performance is entitled to a strong presumption of reasonableness." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Ultimately, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

McPhaul fails to satisfy the *Strickland* test with regard to either of his claims for ineffective assistance of counsel. McPhaul's first argument is that his attorney failed to investigate his history of mental illness in support of a downward departure or "raise the diminished capacity defense." (Mot. Vacate at 9–10.) However, Lawlor argued in favor of a sentence at the low end of the sentencing range agreed to in the plea deal based on lead poisoning. Lawlor explained that McPhaul "[d]idn't choose to live in projects, he didn't choose to have to suffer from lead poisoning, he didn't choose to have . . . family upheaval and be homeless at 16." (Sentencing Tr. at 7, ECF No. 89.) Lawlor further explained, "the things that this kid has had to overcome in his life are things that no one should have to endure." *Id.* McPhaul argues that Lawlor should have made a stronger argument regarding the severity of McPhaul's lead poisoning, which McPhaul claims is supported by "extensive" medical records. (Reply at 2, ECF No. 113.)

The Court finds that Lawlor's representation did not fall below the standard of objective reasonableness. First, McPhaul did not submit any of his medical records to the Court with his briefing, and therefore the Court cannot determine that Lawlor's representation was objectively unreasonable based on McPhaul's medical conditions. Second, the sentencing transcript reveals

that Lawlor made a compelling argument in favor of a sentence at the bottom of the range agreed to in the plea agreement due to the impact of lead poisoning. Furthermore, even if Lawlor's actions here were objectively unreasonable, there is no evidence that additional information, or a motion for a downward departure, would have altered the Court's sentencing decision. In fact, Judge Garbis clearly weighed the impact of lead poisoning when he issued McPhaul's sentence, stating:

> I think certainly the mitigating effects of -- mitigating impact of any potential lead poisoning is something for the Court to consider. But I don't think that it outweighs the harm to the community that's been done. And indeed, the ongoing danger to the community that Mr. McPhaul would pose on the streets . . .

(Sentencing Tr. at 3–4.) Accordingly, because Judge Garbis specifically stated that he weighed the impact of lead poisoning in reaching his sentencing decision, the Court does not find that additional information regarding the impact of lead poisoning or a motion for a downward departure under U.S.S.G. § 5K2.13 would have created a reasonable probability of a lowered sentence. *See United States v. Soto*, 10 F. App'x 226, 228 (4th Cir. 2001) (failure to move for downward departure was not unreasonable where defendant did not show "there was a reasonable probability that the district court would have departed further had [defendant's] attorney requested a departure") (unpublished).

McPhaul also argues that his attorney provided ineffective assistance of counsel because Lawlor failed to argue that increasing the amount of restitution based on conduct not included in the indictment was a violation of *Alleyne*. (Mot. Vacate at 11.) First, *Alleyne* does not concern restitution payments, but instead holds that "facts that increase mandatory minimum sentences must be submitted to the jury." *Alleyne*, 570 U.S. at 116 (2013). Second, the United States Court of Appeals for the Fourth Circuit has stated that "*Alleyne* has not been made retroactively

applicable to cases on collateral review." *United States v. Stewart*, 540 F. App'x 171, 172 n.* (4th Cir. 2013) (per curiam) (unpublished).

Turning to the substance of McPhaul's argument, there is no reason why it is improper for McPhaul to pay restitution for offenses not charged in the indictment. "[A] court may order restitution for non-victims 'if agreed to by the parties in a plea agreement' and may order restitution 'in any criminal case to the extent agreed to by the parties in a plea agreement.'" *United States v. Bradley*, 692 F. App'x 118, 121 (4th Cir. 2017) (quoting 18 U.S.C. § 3663(a)(1)(A), (a)(3)). Here, the amount of restitution is clearly provided in the plea agreement, which states:

> The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.

(Plea Agreement ¶ 12.) The factual stipulation in McPhaul's plea agreement includes information about several other armed robberies which McPhaul admitted he participated in. (*Id.* ¶ 6.) Because McPhaul agreed to provide restitution for other offenses outlined in the factual stipulation (in this case, other armed robberies), it is not a violation of law for him to pay restitution for offenses not specifically charged in the indictment. *See* 18 U.S.C. § 3663(a)(1)(A), (a)(3).

In addition, at McPhaul's arraignment hearing, Judge Garbis questioned the attorneys regarding the exact amount of restitution to be paid. (*See* Arraignment Tr. at 14–15.) Lawlor explained that the restitution would be calculated as "all of the loss covered by not just the offensive conviction but the several other robberies that . . . are relevant conduct and are set out in the factual stipulation and the advisory guideline calculation." (*Id.* at 15.) Judge Garbis agreed that was "sensible," and asked McPhaul whether he agreed "that the restitution amount would be

5

the total amount of all the victims in the robberies you stipulated you did," to which McPhaul replied, "[y]es."[2] (*Id.*)  Therefore, because McPhaul agreed to pay this amount of restitution in his plea agreement, Lawlor made no error in failing to object to these terms.

### III. *Conclusion*

For the foregoing reasons, McPhaul's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 will be denied.  The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Because McPhaul has not made such a showing for the reasons explained above, the Court will not issue a certificate of appealability.

DATED this 29th day of July, 2020.

BY THE COURT:

/s/

James K. Bredar
Chief Judge

---

[2] McPhaul argues in his motion that the waiver of his rights in his plea agreement was "involuntary and unintelligently given" because he was "grossly misinformed by his attorney, the court, and the government." (Mot. Vacate at 9.) McPhaul does not explain how he was misinformed beyond the arguments previously discussed.  Accordingly, the Court finds that he failed to meet his burden to demonstrate by a preponderance of the evidence that he is entitled to relief on this basis.

6